1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Lamesha Arlena Robertson
1215 Holly Burne Avenue
Menlo Park, California [94025]
408 505 7426

**FILED** #2
ifp

SEP 29 2016

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## District Court of The United States
## For Northern California

CITIBANK, NA, as the trustee of
Certificate Holders of CWABS INC.
Asset Backed Certificates, Series
2007- QH2

      Plaintiff(s),

      vs.

LAMESHA ROBERTSON,
and DOES1 through 10
      Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

JCS

**CV16-05553**

Case NO. _____

RE Case NO.: CLJ 205538
[STATE COURT CASE]

ADR

**E-filing**

### Notice of Removal of a Civil Case

### Title 28 USCS Sections 1446(a), 1443, 1441(a), 1441(b), 1331 ; FRCP 11, Title 15

### USC, Sections 1692(c), 1692(d), 1692(e), 1692(f), 1692(g)

To the District Court of the United States for the Northern District of California.

1. I, Lamesha Robertson, the removing party, am the Defendant, in the above -entitled

civil case, and jurisdiction is proper under Title 28 USC, Sections 1441(a), 1441(b)

Constitution, treaties and laws of the United States, 1446, 1443, 1331, 15 USC, Sections

1692(c), 1692(d), 1692(e), 1692(f), 1692(g) and FRCP Section 11.

Notice of Removal               1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2. The above -entitled case is a civil case and was commenced in The SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SAN MATEO, by a written complaint, for the SUPERIOR COURT IN THE COUNTY OF SAN MATEO, STATE OF CALIFORNIA in February of 2012. Such civil case has not yet been brought to trial. This case involves multiple violations of the Fair Debt Collections Practices Act including Title 15 US Code, Section 1692 (c), (d), (e), (f), (g), (h), and (i) and thus the Federal Courts have jurisdiction in this matter. The Plaintiff CITIBANK, NA is a holding company that alleges that they acquired the subject property in a foreclosure sale that was flawed and defective and based upon a series of legal documents recorded in the county recorders office that are flawed and defective. A Deed of Trust was signed on March 15, 2007 as shown on the first page of said deed of trust, see **Exhibit A**, and was notarized and recorded. **Exhibit A** also includes a copy of the Assignment of Deed Of Trust. The Deed of trust identified the Zone Funding as the Lender. Subsequently, an Assignment of Deed of Trust was executed and recorded by MERS, INC. on or about March 7, 2011. At the time MERS had not filed a registration statement with the California Secretary of State, they had failed to file a status report with the California Secretary of State and were not authorized to do business as a corporation doing business in California. In addition, MERS has never demonstrated that they have a property interest in the note and deed of trust, which would have allowed them to sign and record an assignment of deed of trust. The assignment of Deed of Trust is a document that must be made a part of the foreclosure process, see California Civil Code Section 2932.5. California Civil Code Section 2932.5 states as follows:

> **2932.5.** Where a power to sell real property is given to a mortgagee, or
> other encumbrancer, in an instrument intended to secure the payment of

1    money, the power is part of the security and vests in any person who by

2    assignment becomes entitled to payment of the money secured by the

3    instrument. **The power of sale may be exercised by the assignee if the**

4    **assignment is duly acknowledged and recorded.**

5

6    4. The assignment of the Deed of Trust, signed by MERS is invalid, because they

7    have never had a security interest in the note, they have never had a property interest in

8    the note and deed of trust, and because Zone Funding never assigned the note and deed of

9    trust to MERS, Inc. A Nominee in California cannot own the Note, □*"The word*

10   *"nominee" in its commonly accepted meaning, connotes the delegation of authority to the*

11   *nominee in a representative or nominal capacity only, and does not connote the transfer*

12   *or assignment to the nominee of any property in or ownership of the rights of the person*

13   *nominating him."*□Cisco v. Van Lew, 60 Cal.App. 2d 575, 583-584, 141 P.2d 433, 438.

14   Numerous courts around the country have issued rulings that MERS is not allowed to act

15   as a creditor and someone entitled to enforce the note when they are not a note holder. As

16   a result of the foregoing, MERS and CITIBANK, NA and BANK OF AMERICA, NA,

17   and their agents and principals are not the note-holders, they are strangers to the

18   transaction and note entitled to enforce the note. Only Zone Funding can enforce the note

19   and deed of trust. In California, a US Bankruptcy Court for the Southern District of

20   California ruled in the Salazar case that the creditor violated 2932.5 of the Civil Code and

21   cannot foreclose, see in re: Salazar Chapter 13 bankruptcy (Bankruptcy No: 10-17456-

22   MM13). See also MERS, INC. v. NEBRASKA DEPARTMENT OF BANKING AND

23   FINANCE, S-04-786, (Nebraska Sup. Ct, 2005); RESIDENTIAL FUNDING CO., LLC

24   v. SAUMAN, Docket No. 290248; BELLISTRI V. OCWEN LOAN SERVICING, LLC,

25   284 S.W.3d 619, 623 (Mo. App. 2009); LaSalle Bank NA v. Lamy, 824 N.Y.S.2d 769

26   (N.Y. Supp. 2006); Mortgage Electronic Registration System, Inc. v. Southwest Homes

27   of Arkansas, 08-1299 (Ark. 3/19/2009) (Ark., 2009).

28

Notice of Removal                    3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5. In LANDMARK NATIONAL BANK v. KESSLER, 216 P.3D 158 (Kansas, 2009), the Kansas Supreme Court extensively analyzed the position of MERS in relation to the facts in that case and other non-binding court cases and concluded that MERS is only a digital mortgage tracking service. The Court recited that MERS never held the promissory note, did not own the mortgage instrument (though the documents identified it as "mortgagee"), that it did not lend money, did not extend credit, is not owed any money by the mortgage debtors, did not receive any payments from the borrower, suffered no direct, ascertainable monetary loss as a consequence of the litigation and consequently, has no constitutionally protected interest in the mortgage loan. (KANSAS SUPREME COURT, 2009).

6. For there to be a valid assignment, there must be more than just assignment of the deed alone; the note must also be assigned. MERS purportedly assigned both the deed of trust and the promissory note, however, there is no evidence of record that establishes that MERS either held the promissory note or was given the authority . . . to assign the note. MERS claims to have transferred the deed of trust but not the note. There is no admissible evidence that MERS ever had possession of the note and the deed of trust. No one has ever explained who is currently holding the note and why CITIBANK, NA has the rights of a holder of the note and why they are entitled to enforce the note. As a result, the note is lost and the ownership of the note and deed of trust has been split and cannot be enforced, because the note is not in the possession of the alleged creditor, see Carpenter v. Longan, 16 Wall. 271, 83 U.S. 271, 21 L.Ed. 313 (1872).

7. As a result of the foregoing, the Plaintiff is not the owner of record, and does not

Notice of Removal                4

have a right to possession of the note, as incorrectly stated in Paragraph 1, since the Deed of Trust was assigned by MERS, Inc., who never had ownership of the note, and deed of trust because the original lender ZONE FUNDING, did not assign the deed of trust and there is a gap in the chain of title to the Deed of Trust as well as the gap in the chain of title to the subject property. MERS does not have the status of someone entitled to enforce the note and therefore cannot foreclose and does not have standing to sue for unlawful detainer. I, therefore, deny all statements made in paragraphs 1 and 4, since the property cannot be sold by a stranger to the transaction, CITIBANK, NA. I deny all statements made in paragraphs 5 and 6, since the Trustees Deed Upon Sale is void, and defective and without force and effect in law, because it was sold by someone who had no standing, since MERS, Inc. does not have standing to assign the deed of trust as stated above. As a result of the foregoing CITIBANK, NA is an imposter and a stranger to the transaction having been assigned the Deed of Trust by MERS, Inc., who is also a stranger to the transaction and an imposter. MERS, INC. has never acquired an ownership interest in the note and deed of trust from ZONE FUNDING. As a result of the foregoing, CITIBANK, NA and BANK OF AMERICA, NA are strangers to the transaction and have no standing to file an unlawful detainer case pursuant to federal Rules of Civil Procedure, Rule 17(a), because they have not ratified the commencement. Consequently, the Plaintiff did not comply with the requirements under California Civil Code Section 1162, and my possession of the subject property is lawful, since the entire foreclose process is flawed and defective as discussed above. I, therefore deny all statements made in paragraphs 8, 9 and 10 since the Plaintiff has never had a lawful interest in the subject property as discussed above. CITIBANK, NA is a Delaware corporation and BANK OF AMERICA, NA is a North Carolina based Corporation. Both corporations are domiciled outside of California. I, Lamesha Robertson, the Defendant am from California and the value in controversy exceeds $ 75,000.00 dollars in value, **therefore the conditions precedent for removal of a civil case are met under the diversity of citizenship statutes and**

Notice of Removal                    5

1    pursuant to Article Three of the US Constitution, requiring that federal diversity

2    jurisdiction must be exercised whenever there are citizens of different states named

3    as opposing parties to a civil action.

4

5    **4. Statement of Facts and Grounds Supporting Removal.**

6

7    **(A.) Pursuant to Section 1441(b) of title 28 US Code providing for adjudication of**

8    **any matter involving the Constitution, laws and treaties of the United States this**

9    **court has jurisdiction, our rights to due process of law were denied, as guaranteed**

10   **under the Fifth and Fourteenth Amendment to the US Constitution, and our rights**

11

12   **under Title USC 15, Section 1692(c), 1692(d), 1692(f), 1692(g) for multiple violations**

13   **of the Fair Debt Collection Practices Act. The Plaintiff was allowed to file an**

14   **unlawful detainer case against me without standing. In addition, the diversity of**

15   **citizenship clause of the Constitution, found at Article Three is also invoked, since**

16   **the parties are citizens of different states and the value in controversy exceeds**

17   **seventy-five thousand dollars.**

18

19

20   **(B.) In addition, 1443 of Title 28 USC of the Federal Rules of Civil Procedure, I was**

21   **denied my civil rights with respect to the due process of law violations under the**

22   **Fifth Amendment and Fourteenth Amendment to the United States Constitution.**

23   Pursuant to Section 1443 of Title 28 USC of the Federal Rules of Civil Procedure, a party

24   to a civil case may remove to federal court an action involving the violation of the equal

25   civil rights of Citizens of the United States.

26

27

28

Notice of Removal                    6

1

2    MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF REMOVAL

3

4    STATEMENT OF FACTS

5    5. This is a petition for a removal, requesting injunctive relief from this court against the

6    Defendants who are a few days or weeks away from forcing me to give up custody and

7    control out of my home in a wrongful foreclosure and eviction regarding land and

8    buildings situated at 1215 Holly Burne Avenue, Menlo Park, California. This removal is

9    brought by me, Lamesha Robertson, acting in my private capacity in this matter, as a

10   property owner in California, and I have allodial title. I wish to extinguish the obligation,

11   due to intrinsic and extrinsic fraud. On February 20, 2004, I, entered into a loan

12   agreement with ZONE FUNDING to refinance the subject land and home. It appears that

13   COUNTRYWIDE HOME LOANS purchased many of the ZONE FUNDING promissory

14   notes, after the FDIC took over said bank when it became insolvent. CITIBANK, NA is

15   claiming to be acting as the trustee of the Certificate Holders of CWABS INC. Asset

16   Backed Certificates, Series 2007- QH2 and I am not certain who has custody of the note

17   and deed of trust at this point, however, it appears that a Third-Party-Note-Buyer has

18   purchased the note and deed of trust from the original lender, ZONE FUNDING, with

19   whom I signed a promissory note and deed of trust. There is good evidence that ZONE

20   FUNDING sold a large number of their notes to COUNTRYWIDE. Subsequent to the

21   mailing of various foreclosure notices, a Trustee acted as an agent of BANK OF

22   AMERICA, NA and they sold the subject property in an unlawful foreclosure sale in a

23   public auction. It has become apparent from the public record of lawsuits filed by various

24   institutional investors, such as TIAA-Creff AND NEW YORK LIFE INSURANCE

25

26

27

28

COMPANY, that virtually all of the banks in the United States such as COUNTRYWIDE HOME LOANS were securitized by one of several wholly owned subsidiaries, see for example DEXIA HOLDINGS, et al v. COUNTRYWIDE HOME LOANS, et al, CASE NUMBER 650185-2011 filed in the Supreme Court of New York, New York County, New York. BANK OF AMERICA, NA never produced the original note when asked, proving that they were not in possession of the note and thereby have no standing to sell the subject property in a foreclosure sale, see Matter of Staff Mortg. & Inv., 550 F 2d 1228, (Ninth Cir. 1977), stating that a security interest in instruments is perfected by possession. This is forensic evidence that BANK OF AMERICA, NA does not have possession of the original note and that the note is a lost note and subject to all of the conditions and requirements found in California Commercial Code Section 3309. CITIBANK, NA allegedly purchased the property in the above-described public auction held in 2011. This auction was held in flagrant violation of the Section of California Civil Code, section 2932.5, that requires anyone who purchases a promissory note and deed of trust as a third party to file a document at the county recorders office called "Assignment of Deed of Trust". It is clear from the investor lawsuit filed in New York, and cited above that virtually all of the loans originated by banks and warehouse lenders like ZONE FUNDING were securitized and sold to investors, through various wholly owned subsidiaries, see DEXIA HOLDINGS, supra, cited above. There is no public disclosure about the amount of money the Plaintiff paid for the subject property, but in most cases, the banks sell properties, for much less than the face value of the note.

6. When a party buys a promissory note for less than the full value of the debt, they do not have the right of subrogation. An Undisclosed-Third-Party-Note-Buyer, purchased the

note and deed of trust from ZONE FUNDING, as a stranger to the transaction and never had standing to sell the property in a foreclosure sale. The right of subrogation does not exist for a stranger to the transaction or someone who does not pay the entire debt in full, see 73 AM JUR, 2nd, Section 90. Additionally, BANK OF AMERICA, NA never produced the original note as required by law, a requirement that they prove that they have standing to sue, see Matter of Staff Mortg. & Inv., 550 F 2d 1228 (Ninth Cir., 1977), and six subsequent rulings by the Ninth Circuit, with substantially the same conclusion that the creditor must have possession of the note in order to enforce a security interest in the subject property. Several Sections of California Commercial Code require the creditor to be in possession of the original note with endorsements, including 3109, 3201, 3203, 3204, 3205, 9313, 9314 and 1201(b)(21)(A). Without physical transfer of the note the sale of the property in a trustees sale is a fraudulent conveyance, see Bear v. Golden Plan of California, Inc. 829 F 2d 705, at 709 (Ninth Circuit, 1986). See also California Civil Code Section 3440 and Roger Bernhard, California Mortgages and Deeds of Trusts and Foreclosures Litigation, Section 1.26 (Fourth Edition, 2009.  In most cases the banks sell their notes to either Wall Street asset backed securities or the Federal Reserve. It appears that BANK OF AMERICA, NA does not have possession of the original note either, because they have NOT brought forward the original promissory note with wet ink signatures for my review and neither has the trustee. Unless BANK OF AMERICA, NA can produce the original note, and demonstrate that the Trustee has authority from the Holder-in-due-course of the note, to hold a foreclosure sale, and the current Third-Party-Note-Buyer has the right of subrogation, they have no standing to purchase of the property located at 1215 Holly Burne Avenue, Menlo Park, California, as a way to protect their alleged lien.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADDITIONAL CASE LAW SUPPORTING THE REQUIREMENT TO PRODUCE

THE NOTE

7. The servicing agent may have standing if acting as an agent for the holder, assuming that the agent can both show agency status and that the principle is the holder. In re Vargas, 396 B.R. 511 (Bankr. C.D. Cal. 2008) at 520.

8. ..."Only the Holder of the Note is the "Real Party in Interest."....The right to enforce the mortgage on behalf of the note holder does not, however, render the note holder's agent into the real party in interest. "As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name." Wright & Miller, 6A Federal Practice & Procedure Civ. 2d § 1553. Consequently, even if a court finds that a proper agency relationship exists between the holder of a note and the party seeking to enforce its security, this does not excuse the agent from the requirement that an action be prosecuted in the name of the note holder, who is the real party in interest. Fed.R.Civ.P. 17(a) (1)". In re Hwang, 396 B.R. 757 (Bankr. C.D. Cal. Sept. 2008)

9. IT MUST ALSO BE ASSUMED THAT the refusal to bring the note forward is connected to a splitting of the note and deed of trust, rendering both documents unenforceable. Given that "the debt is the principal thing and the mortgage an accessory," the Supreme Court reasoned long ago that as a corollary, "the mortgage can have no separate existence." Carpenter v. Longan, 83 U.S. 271 at 274 (1872); Henley v. Hotaling, 41 Cal 22, at 28 (1871); Seidell v. Tuxedo Land, 216 Cal. 165 (1932).

10. BANK OF AMERICA v. Jordan, Case No. 91675 (Ohio App. March 12, 2009) (reversing grant of summary judgment and remanding to trial court to dismiss foreclosure

suit because BANK OF AMERICA was not the real party in interest on date of
foreclosure complaint and thus lacked standing).

11. The original lender involved in the first note and deed of trust, ZONE FUNDING,
advertised and represented that they had lawful money of the United States of America to
lend when they negotiated and contracted with me. The Loan was transferred and
assigned sometime after they processed the original loan. The ZONE FUNDING note was
apparently sold to an Undisclosed Third Party Note Buyer, and BANK OF AMERICA,
NA became the loan servicer after the purchase of the note.  It appears, based upon court
documents, and the foreclosure practices engaged in by the Defendants that an
Undisclosed Third Party Note Buyer at some point allegedly became the holder-in-due-
course of the note. The banks and financial services companies involved, and BANK OF
AMERICA, NA, and others not named in this complaint, have exceeded their authority,
acted outside the scope of their authority, violated my rights and violated the law, by
claiming to have standing to foreclose on a note and deed of trust, even though they
cannot produce the note, which was allegedly acquired by them from ZONE FUNDING,
with whom I signed a promissory note and deed of trust.  I, the Plaintiff, have spent
thousands of dollars of my own money on monthly mortgage payments.

12. Neither the Trustee, nor BANK OF AMERICA, NA have supplied any material
evidence that they are the holder in due course of the ZONE FUNDING note and deed of
trust. This is an established requirement and has been a factor in determining whether or
not a particular creditor has standing to sue for recovery of damages in a foreclosure. To
recover on a promissory note, the Defendants must prove: (1) the existence of the note in
question; (2) that the party sued signed the note; (3) that the Defendant is the owner or

Notice of Removal                    11

holder of the note; and (4) that a certain balance is due and owing on the note. See In Re: SMS Financial LLC. v. Abco Homes, Inc. . No.98-50117 February 18, 1999 (5th Circuit Court of Appeals.) In Carnegie Bank v Shalleck ; 256 N.J. Super 23 (App. Div. 1992), the Appellate Division held, "When the underlying mortgage is evidenced by an instrument meeting the criteria for negotiability set forth in N.J.S. 12A:3-104, the holder of the instrument shall be afforded all the rights and protections provided a holder in due course pursuant to N.J.S. 12A:3-302. Since no one is able to produce the "instrument" there is no competent evidence before the Court that any party is the holder of the alleged note or the true holder in due course. New Jersey common law dictates that the plaintiff prove the existence of the alleged note in question, prove that the party sued signed the alleged note, prove that the plaintiff is the owner and holder of the alleged note, and prove that certain balance is due and owing on any alleged note. Federal Circuit Courts have ruled that the only way to prove the perfection of any security is by actual possession of the security." See also Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977), "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389. Additionally, BANK OF AMERICA, NA has failed to produce the original note, signed by me, with the original bank loan from ZONE FUNDING, prior to the sale of the subject property in a public auction. The Defendants or their predecessor-in-interest have obviously sold the original note to an undisclosed-third-party-note-buyer, probably a mortgage-backed - security, since they have failed and refused to bring forward the original note for executed by us.

1

2   13. Additionally, a more important issue is the question of whether or not BANK OF

3   AMERICA, NA, or any one else has the right of subrogation as a stranger to the

4   transaction, and as someone who has not paid the entire mortgage debt in full, see 73 AM

5   JUR Second, Section 90. One of hundreds of REMICs, created by the banks nationwide

6   appear to have purchased the Note and Deed of Trust associated with the ZONE

7   FUNDING bank loan for my property. The loans were subsequently sold to institutional

8   investors who later discovered problems with credit quality and credit risk. The question

9   of the subrogation was explored in great depth in <u>Aetna L. Ins. Co. v. Middleport</u>, 124

10  U.S. 534, which stated that only a cosigner, or someone who is acting to protect their own

11  junior lien or an insurance company has the right of subrogation. "<u>Subrogation in equity</u>

12  <u>is confined to the relation of principal and surety and guarantors</u>, to cases where a person

13  to protect his own junior lien is compelled to remove one which is superior, and to cases

14  of insurance.....Anyone who is under no legal obligation or liability to pay the debt is a

15  stranger, and, if he pays the debt, a mere volunteer.". (emphasis mine) <u>Aetna Life v.</u>

16  <u>Middleport</u>, 124 US 534, quoting <u>Suppiger v. Garrels</u>, 20 Bradwell App Ill. 625. The

17  Plaintiff, claims to have purchased the subject property at a public auction from an

18  Undisclosed Third Party Note Buyer, which clearly never had the right of subrogation and

19  was clearly never a cosigner or a surety to the original Promissory note. The requirement

20  for the sale of a home in foreclosure is that the foreclosing party must obtain a court order

21  from a court of record, see California Civil Code, section 2924 (power of sale clause).

22  This is a reflection of the common law requirement found in the Fifth, Fourteenth and

23  Seventh Amendment to the US Constitution.  Attorneys, have an auxiliary role to play in

24  this matter, assisting the Plaintiff in their unlawful activities, by making an unlawful

25

26

27

28

Notice of Removal                    13

purchase of my home in a foreclosure sale at fire sale pricing, so they could obtain huge

profits on the resale of my home. BANK OF AMERICA, NA, clearly never had the

power to foreclose on the note and deed of trust, since the original note was sold to an

Undisclosed-Third-Party-Note-Buyer who is a stranger to the transaction. As a result of

the foregoing, the Plaintiff purchased the subject property in a public auction from an

undisclosed-third-party-note-buyer, who did not have the power or standing to foreclose

on my home and have exercised this power under color of authority by using the organs

and instrumentalities of California government, including the County Recorders Office,

to take my private property without due process of law and without standing. Due process

of law violations occurred when those without standing to sue are allowed to pursue a

foreclosure or other type of legal action. All parties, acting together have engaged in theft

of private property. THEY ALSO VIOLATED TITLE 15, US CODE, SECTIONS

1692(c), 1692(d), 1692(e), 1692(f), and 1692(g). The term subrogation has a well-

established meaning in the law, and the above US Supreme Court ruling has clear and

unmistakable language, which does not lend it self to ambiguity or a multiplicity of

interpretations. The Plaintiff is clearly acting as agents and loan servicers for an

undisclosed-note-buyer, who has no right of subrogation as a stranger to the transaction.

At no time has BANK OF AMERICA, NA or the actual holder-in-due-course of the note

filed a civil action to quiet title in this matter, nor have they obtained a court order from a

court of record as required in California Civil Code Section 2924.

**ARGUMENT**

**I. THE POWER OF SALE NEVER EXISTED FOR THE DEFENDANTS AND
THEIR PREDECESSOR IN INTEREST**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14. The Plaintiffs in this matter and all of them have conspired to set aside due process requirements provided for in California law, under Section 2924 of California's Civil Code, which contains a "power of sale" clause requiring the banks, lenders and their trustees to obtain a court order from a court of record authorizing the sale of any real property prior to the sale of the real property in a public auction or any type of sale of the property as part of the foreclosure. An Undisclosed Third Party Note Buyer has "sold" the subject property at 1215 Holly Burne Avenue, Menlo Park, California to BANK OF AMERICA, NA without first obtaining a court order from a court of record as required in the above cited statute. The power of sale clause reflects and implements the Due Process clauses found in the Fifth and Fourteenth Amendments to the US Constitution and is obviously included in the law to invoke these due process provisions.

15. The specific wording in the statute is as follows: "...a power of sale is conferred upon the mortgagee, a trustee, or any other person, to be exercised after a breach of the obligation for which the Mortgage or transfer is a security, *the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record."* (Emphasis added). The very clear and unambiguous language of the statute cited above makes it mandatory that a lender must first obtain a court order prior to holding a public auction for the foreclosed property on the courthouse steps. There is no latitude for interpretation or debate in this regard. The plain language makes it mandatory to obtain a court order as a prerequisite to holding a foreclosure sale. Any other methods amount to unlawful conversion. The mailings described above are fraud because the attempt to collect a debt without first producing the original note and showing that they are in possession of the note pursuant to Matter of

Notice of Removal                    15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Staff Mortg. & Inv. Corp., 550 F. 2d 1228, (Ninth Cir. 1977), and six subsequent decisions by the Ninth Circuit in which this decision was affirmed. It is also obvious that the original lender and its wholly owned subsidiaries have obtained payment from various insurance products known as "credit enhancements", see MBIA Insurance Corporation v. COUNTRYWIDE HOME LOANS, INC, 2009 WL 2135167, (N.Y. Sup., July 8, 2009) for an example of a large bank lawsuit, in which the court sustained common law fraud claims filed against a bank by the Plaintiff, MBIA Insurance. This proves that insurance was paid out on COUNTRYWIDE defaulted loans and that virtually all of the loans made by banks in the United States are insured by mortgage insurance. Therefore, BANK OF AMERICA, NA or their predecessor-in-interest was paid and that the foreclosure and unlawful detainer is a part of the on-going fraud.

16. The SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SAN MATEO, hereinafter THE SUPERIOR COURT, would normally be expected to provide a gatekeeper role in their capacity as an overseer and protector of the public against fraud by litigants, preventing an unlawful detainer case from being filed or pursued when the pre-conditions or conditions precedent to foreclosure have not been met. The stated requirement for obtaining a court order from a court of record prior to the sale of the subject property in a foreclosure sale is so clear and unmistakable that it seems that there is no latitude for debate in this regard. The failure to comply with the statute cited above is a bar to sale of the subject property under the above-cited statute. THE SUPERIOR COURT has routinely and consistently set aside this requirement, the court order requirement found in California Civil Code Section 2924, for all financial institutions and lenders and continues this practice today. The SUPERIOR COURT has

abandoned their gatekeeper role in this regard and must be compelled to follow state and Federal Constitutional law as provided for in the Due Process Clause of the Fifth and Fourteenth Amendment to the US Constitution. In this case the SUPERIOR COURT OF THE STATE OF CALIFORNIA IN AND FOR THE COUNTY OF SAN MATEO has allowed the Plaintiff to file an unlawful detainer case without meeting the prerequisites discussed above for filing such a state court civil action, violating my rights to judicial due process.

17. A court of record is specifically described as a common law court in the authorities in California and around the nation, see Ex Parte Thistleton, 52 Cal. 220, at 225 (California Supreme Court, 1877). THE SUPERIOR COURT is defined as a court of record in Article Six, Section One of the California Constitution but appears the SUPERIOR COURT has abandoned the common law requirement stated in the established definition of a court of record found in Ex Parte Thistleton, supra, at 225 cited above. For additional authorities please see Black's Law Dictionary, Fourth Edition pages 425 and 426 for further discussion of the court of record as follows; "Courts of record are those whose acts and judicial proceedings are enrolled or recorded for a perpetual memory and testimony and which have the power to fine and imprison for contempt........ A "court of record" is a judicial tribunal having attributes and exercising functions independently of the Magistrate designated generally to hold it, and proceeding according to the course of the common law, its acts and proceedings being enrolled for a perpetual memorial. Jones v. Jones; 188 Mo. App.220 175 S.W. 227, 229; Ex Parte Gladhill, 8 Metc., Mass. 171, per Shaw, C. J. See also Ledwith v Rosalski; 244 N.Y. 406,155 N.E.688, 689." (Emphasis supplied). Under common law there is no authority for any summary

Notice of Removal                    17

proceeding without a jury involving a matter in controversy that exceeds twenty dollars, and usually the California state courts will allow the banks to file a summary judgment motion whenever the Defendant in an unlawful detainer case files paperwork requesting a jury. Therefore, since the Superior Courts in California are supposed to be courts of record, and thereby common law courts, pursuant to the Ex Parte Thistleton decision, cited above, the unlawful detainer is a violation of the rules of the common law, and void.

18. Actions by the Plaintiff to claim to have a security interest in my private land and home and personal property and claim authority to hold a foreclosure sale is an action beyond the scope of their authority as strangers to the transaction, and as parties who have not brought a suit against me under common law to litigate title. This is described by the United States Supreme Court as tyranny in; United States v. Lee; 106 US 196, 1S. Ct. 240 (1882) where the United States claimed ownership of property via a tax sale some years earlier, the court stated as follows:

19. "No man in this country is so high that he is above the law. No officer of the law may set that law at defiance with impunity. All the officers of the government, from the highest to the lowest are creatures of the law and are bound to obey it. It is the only supreme power of our system of government, and every man who by accepting office participates in its functions is only the more strongly bound to submit to that supremacy, and to observe the limitations which it imposes upon the exercise of the authority which it gives...... Shall it be said ... that the courts cannot give remedy when the citizen has been deprived of his liberty by force, his estate seized and converted to the use of the government without any lawful authority, without any process of law, and without any compensation, because the president has ordered it and his officers are in possession? If such be the law of this country, it sanctions a tyranny which has no existence in the

monarchies of Europe, nor in any other government which has a just claim to well-regulated liberty and the protection of personal rights." In US v. Lee, supra, the government can be considered as similar and applying in like manner as the defendants in the above captioned case. If government agencies cannot take private property without due process of law, how can a bank or mortgage company do so?

20. The Supreme Court also reaffirmed the right to enjoy private property and not be deprived of it without due process of law in Lynch v. Household Finance Corp.; 405 US 538 (1972);

"Such difficulties indicate that the dichotomy between personal liberties and property rights is a false one. The right to enjoy property without unlawful deprivation, no less than the right to speak or the right to travel, is in truth a "personal" right whether the "property" in question be a welfare check, a home, or a savings account. In fact a fundamental interdependence exists between the personal right to liberty and the personal right in property. Neither could have meaning without the other. That rights in property are basic civil rights has long been recognized. J. Locke Of Civil Government 82-85(1924); J. Adams A Defense of the Constitutions of Government of the United States of America, in F. Coker Democracy, Liberty and Property 121-132 (1942); 1 W. Blackstone, Commentaries 138-140."

21. The taking of private property without due process is clearly a violation of civil liberties as well as personal rights. One of the settled principles of our Constitution is that these Amendments are to protect only against invasion of civil liberties by the government whose conduct they alone limit. Burdeau v. McDowell ; 256 US 465, 41 S. Ct. 574, 65 L Ed. 104813 ALR 1159 (1921); Weeks v. United States; 232 US 383, 34 S. Ct. 341, 58 L. Ed. 652, (1914);Hall v. United States; 41, F 2d 54(9th Cir. 1930); Brown v.

United States; 12 F 2d. 926 (9th Cir. 1926). Therefore the organs of government cannot be used to participate and assist in the unlawful plunder of our private allodial property.

22. The Defendant does not have standing to foreclose because their predecessor-in-interest never obtained a court order from a court of record prior to holding a foreclosure sale and selling the property in violation of California Civil Code 2924. This case is analogous to the Lynch case cited above, since in both cases judicial due process requirements were set aside prior to the taking of private property. The Plaintiff and their predecessor-in-interest, the undisclosed-third-party-note buyer, never recorded an assignment of deed of trust document as required pursuant to California Civil Code Section 2932.5. I seek protection by way of an emergency order of cease and desist from this court, ordering the Plaintiff to cease and desist and to stay their unlawful detainer case for a period of four years until such time as a Quiet Title case, which is on appeal with the ninth Circuit, can be litigated.

## II. POSSESSION OF THE ORIGINAL NOTE IS A REQUIREMENT FOR ENFORCEMENT OF NOTES

23. At no time have either the Trustee, or the Plaintiff supplied any material evidence that they are the holder in due course of the ZONE FUNDING note and deed of trust. This is an established requirement and has been a factor in determining whether or not a particular creditor has standing to sue for recovery of damages in a foreclosure. To recover on a promissory note, the Plaintiff must prove: (1) the existence of the note in question; (2) that the party sued signed the note; (3) that the Plaintiff is the owner or holder of the note; and (4) that a certain balance is due and owing on the note. See In Re:

Notice of Removal                           20

SMS Financial LLC. v. Abco Homes, Inc. . No.98-50117  February 18, 1999 (5th Circuit Court of Appeals.) See In Carnegie Bank v Shalleck ; 256 N.J. Super 23 (App. Div 1992), discussed above. See also Matter of Staff Mortg. & Inv. Corp., 550 F.2d 1228 (9th Cir 1977), "Under the Uniform Commercial Code, the only notice sufficient to inform all interested parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." Bankruptcy Courts have followed the Uniform Commercial Code. In Re Investors & Lenders, Ltd. 165 B.R. 389.

Additionally, BANK OF AMERICA, NA has failed to produce the original note, signed by me, with the original bank loan from ZONE FUNDING.  The Plaintiff or their predecessor-in-interest have obviously sold the original notes to an undisclosed-third-party-note buyer, since they have failed and refused to bring forward the original note for the loan executed by me. As a result the Plaintiff does not have the original note in their possession and does not have the power to foreclose. THE SUPERIOR COURT does not require the lenders and banks to produce the note or show that they are in possession of the note even though the creditors are required to do so under Uniform Commercial Code, AND CALIFORNIA APPELLATE COURTS REQUIRE IT, SEE PRIBUS v. BUSH, 118 Cal App. 2d 1003, (1981) which is law in all fifty states of the Union and is part of the legal landscape in California.

24. That if the Defendant's home loan has been securitized, the Plaintiff who non-judicially foreclosed the Defendant's mortgage loan and sold the property at the Trustee's Sale, other than the original lender, ZONE FUNDING, is the payee named on the face of the original Promissory Note signed by the Defendant with the right to enforce the security provided by the Deed of Trust signed by the Defendant/Borrower. It is well

known, based upon the history of banks documents filed with the Securities and Exchange Commission that they were securitizing their notes as early as 2000. All of the large banks and most of the small regional banks have securitized their notes. The Plaintiff failed to record an assignment-of-deed-of-trust as required under California Civil Code Section 2932.5. This also means that the Plaintiff has not met the requirements under 1161a of the California Code of Civil Procedure, since they have not duly perfected the title.

25. That, on information and belief, none of the Parties identified in this pleading is the owner, the custodian, the holder or the assignee of the original Promissory Note signed by the Defendant/Borrower with the power and authority to enforce the security nor are any of them the Real Party in Interest with standing to enforce the security under Rule 17(a) of the Federal Rules of Civil Procedure mandating the ratification of commencement.

26. That, on information and belief, as indicated above, the original of the Promissory Note signed by the Defendant/Borrower, has been lost, stolen, destroyed or shredded by persons unknown, otherwise the original of that Promissory-Note should have been produced to the Borrower by the Plaintiff or the loan servicer or by the assignee of the original lender's interest in the Defendant's home loan.

27. That before the true lender or its assignee could authorize the non-judicial foreclosure and sale of the Defendant's property to take place, the Plaintiff original lender or its assignee, whoever that might be, must first have demonstrated that it had in its possession the original of the Promissory Note signed by the Defendant/Borrower since, pursuant to

UCC and California Commercial Code Section 3309(a), only the persons named therein have authority to enforce that instrument.

28. According to California Commercial Code, Section 1201(b)(21)(A) the holder of a note is defined as a party who has possession of the note, and therefore by that definition, the alleged note holder, those claiming to be the note holder or those playing hide and seek with the note and the note holder status, must bring forward the original note when asked, or else they are violating the hearsay rule, and are acting in bad faith, admitting that they do not have the note in their possession. California Commercial Code Section 1201(b)(21)(A) states as follows:

(21) "Holder," means:

"(A) the person in possession of a negotiable instrument that is payable either to bearer or, to an identified person that is the person in possession; or

(B) the person in possession of a document of title if the goods are deliverable either to bearer or to the order of the person in possession."

*29. In the Notice of Trustee's Sale, THE TRUSTEE claims that it had authority to conduct the non-judicial Trustee's Sale of the Defendant's residence/property although, in that Notice of Trustee's Sale, (a) THE TRUSTEE does not set forth the name of the individual or entity commissioning it to conduct the Trustee's Sale of the subject property and fails to state (b) that, at or before the time of the Trustee's Sale, the seller THE TRUSTEE will have in its possession the original of the Promissory Note signed by the Defendant/Borrower at the inception of our home mortgage loan, which is a precondition to THE TRUSTEE's right and entitlement to enforce the instrument and to sell the property at the Trustee's Sale, (c) does not state that THE TRUSTEE is the "holder" of that Promissory Note with authority to enforce the instrument and with authority to sell*

*the property at a Trustee's Sale under UCC and California Commercial Code Section 3309, (d) does not state that although THE TRUSTEE is not a holder in possession of the instrument THE TRUSTEE nevertheless has the rights of a holder and has authority to enforce the instrument and authority to sell the property at a Trustee's Sale under UCC and California Commercial Code Section 3309(a), and (e) does not state that THE TRUSTEE is a person not in possession of the Promissory Note but nevertheless is entitled to enforce the instrument under UCC and California Commercial Code 3309; Therefore THE TRUSTEE, lacked authority to conduct the Trustee's Sale.*

*30. On information and belief, the original of that Promissory Note in question has been lost, intentionally destroyed, shredded or is missing.*

*31. On information and belief, the person or entity actually commissioning THE TRUSTEE to conduct the Trustee's Sale did not have physical possession, care, custody or control of the original of the Promissory Note and was not the holder of the original of the Promissory Note signed by the Plaintiff/Borrower at the time that person or entity commissioned THE TRUSTEE to conduct the Trustee's Sale of the Plaintiff's residence/property.*

*32. That THE TRUSTEE did not have authority from the Plaintiff mortgagor's original lender ZONE FUNDING or from the assignee of that original lender, whoever that might be, to commission THE TRUSTEE to sell the property at the above referenced non-judicial Trustee's Sale.*

33. To prove up a claim of damages, the foreclosing party must enter evidence incorporating records such as a general ledger and accounting of an alleged unpaid promissory note, the person responsible for preparing and maintaining the account

Notice of Removal                    24

1   general ledger must provide a complete accounting which must be sworn to and dated by

2   the person who maintained the ledger.  See  Pacific Concrete F.C.U. V. Kauanoe,   62

3   Haw.334, 614 P.2d 936 (1980),  GE Capital Hawaii, Inc. v. Yonenaka  25 P.3d 807, 96

4   Hawaii 32, (Hawaii App 2001), Fooks v. Norwich Housing Authority; 28 Conn.L. Rptr.

5   371, (Conn. Super.2000), and Town of Brookfield v. Candlewood Shores Estates, Inc.;

6   513 A.2d 1218, 201  (1986). See also Solon v. Godbole;163 Ill. App. 3d 845, 114 Il. See

7   also Remington Investments, Inc.□v. Hamedani, 55 Cal.App.4th 1033 (1997), requiring

8   that the general ledger be made a part of testimony and evidence to support the creditor's

9   claims.

## III. THE RIGHT OF SUBROGATION DOES NOT EXIST FOR EITHER BANK OF
## AMERICA, NA OR THE UNDISCLOSED-THIRD-PARTY-NOTE-BUYER

34. It is clear that BANK OF AMERICA, NA's principal, the undisclosed-third-party-note buyer, does not have the right of subrogation as a stranger to the transaction, and as someone who has not paid the entire mortgage debt in full, see 73 AM JUR Second, Section 90. An Undisclosed-Third-Party-Note-Buyer, appears to have purchased the Note and Deed of Trust associated with the ZONE FUNDING loan for my property. BANK OF AMERICA, NA has failed to produce the original note signed with ZONE FUNDING, and therefore, obviously the note has been sold to an undisclosed-third-party, and BANK OF AMERICA, NA is thereby acting as an agent for the undisclosed-third-party-note-buyer, who does not have the standing to enforce the note because their undisclosed-third-party-note-buyer does not have the right of subrogation as a stranger to the transaction. Therefore, BANK OF AMERICA, NA's principal does not have the right to enforce the note because their undisclosed-third-party-note-buyer lacks the right of subrogation.

The question of the subrogation was explored in great depth in <u>Aetna L. Ins. Co. v. Middleport</u>, 124 U.S. 534, which stated that only a cosigner, or someone who is acting to protect their own junior lien or an insurance company has the right of subrogation. "<u>Subrogation in equity is confined to the relation of principal and surety and guarantors</u>, to cases where a person to protect his own junior lien is compelled to remove one which is superior, and to cases of insurance....Anyone who is under no legal obligation or liability to pay the debt is a stranger, and, if he pays the debt, a mere volunteer.". (emphasis mine) <u>Aetna Life v. Middleport</u>, 124 US 534, quoting <u>Suppiger v. Garrels</u>, 20 Bradwell App Ill. 625.

35. The Plaintiff, appears to have purchased the subject property at a public auction from the Undisclosed-Third-Party-Note-Buyer, a party that clearly never had the right of subrogation as a stranger to the original transaction and was clearly never a cosigner or a surety to the original Promissory-note. As a result of the foregoing the Plaintiff has no right to file an unlawful detainer case or a forcible detainer case against me because they have purchased the subject property from an Undisclosed-Third-Party-Note-Buyer, who lacks standing because they lack the right of subrogation, and did not show that they possess the note signed with ZONE FUNDING, and did not adhere to the legal requirements found in California Civil Code Section 2924 discussed above prior to holding a foreclosure sale.

**IV. THE FORECLOSURE IS FRAUDULENT BECAUSE IT INVOLVED USE OF WRITTEN COMMUNIATIONS THROUGH THE MAIL MISREPRESENTING THAT THE DEFENDANTS HAD STANDING TO FORECLOSE.**

36. When there is fraud involved, then any action that flows from that fraud is null and void and without force or effect in law, *Ex Dolo Malo Non Oritur Actio,* **out of fraud no action arises.** Additionally, if this is true the Defendants are liable for fraud, fraudulent conversion and attempted theft of private property. This claim of ownership of my home and land without a judicial trial by the jury, and without due process of law, access to an appeals process, a final judgment by a court, represents a taking of property without due process of the law in violation of the Fifth and Fourteenth Amendments to our Federal constitution. The fraud has occurred numerous times by way of correspondence and phone calls from the Plaintiffs and their agents over the last one year, during the year 2010, where they attempted to mislead me into believing that I owed them money and they had a lawful claim to enforce the note, even though the Undisclosed-Third-Party-Note-Buyer did not have such authority because they do not have the right of subrogation as a stranger to the transaction. Similarly, BANK OF AMERICA, NA appears to be acting as a loan servicer for an undisclosed-third-party-note-buyer as discussed above, and therefore lacks the right of subrogation for the note that was signed with ZONE FUNDING. Any and all claims of a right to foreclose in their many written notices are therefore fraudulent, by their attempt to induce and mislead me into believing that they have standing to foreclose when they do not.

37. The Plaintiff, committed acts of mail fraud by representing themselves as a party who has the power to foreclose in spite of the fact that they purchased the subject property in an illegal and unlawful foreclosure sale without compliance with California Civil Code Section 2924 as discussed above, and without compliance with the Fifth Amendment to the US Constitution and without compliance with the multiple sections of California

Notice of Removal                    27

Commercial Code that I have cited above. The alleged creditor, BANK OF AMERICA, NA is not a creditor and does not have the power of enforcement unless they have possession of the note and they do not have possession, nor have they made any effort to produce the original note in spite of numerous requests by me demanding that they produce the original note, see my Qualified Written Request, **Exhibit B**. They are also engaged in fraud because they purchased the subject property, as an agent for an undisclosed-third-party-note-buyer, who has no right of subrogation as a stranger to the transaction, therefore no power to sell the property in a foreclosure sale. In addition, all of the banks depositors who create REMICs buy mortgage insurance, such as credit default swaps, and have already been paid for the unpaid portion of the mortgage, making the unlawful detainer a part of the ongoing fraud.

38. The Trustees Deed Upon Sale dated February 24, 2011 and recorded March 1, 2011 and the Notice of Default from BANK OF AMERICA, NA, filed 2010 and are attached and incorporated by reference as **Exhibit C**, which was filed in the County Recorders Office without complying with Section 2924 of the Civil Code of the State of California, implying that they have the power to foreclose and act as if they are a landlord or owner of the subject property even though they have no standing to foreclose or sue for unlawful detainer as the alleged owner, as previously discussed. Pursuant to the foregoing statement, the Undisclosed-Third-Party-Note-Buyer did not comply with the requirement of obtaining a court order from a court of record as required under California Civil Code, Section 2924 prior to "selling" the subject property to BANK OF AMERICA, NA. As a result, the filing of the before mentioned Trustees-Deed-Upon-Sale was fraudulent.

39. The most intense and deliberate acts of fraud occurred in the months of June through and December of 2010 by way of written and telephonic communications, threatening to foreclose, even though they lack standing as strangers to the transaction. When examining **Exhibit C, the Notice of Default**, it appears that the entire document is filled with false and misleading statements but the last paragraph is designed to mislead me into believing that I owe money to the alleged beneficiary or trustee and that my only option is to pay the debt and that the beneficiary is empowered and has the standing to foreclose.

40. The Plaintiffs and their agents, through the above described document, are engaged in a willful and deliberate act of making false and misleading statements designed to mislead me and make me rely on their statements to my detriment, so I will be influenced by their written communications to take actions that are detrimental to me, whereby I either pay money for payment of the note and deed of trust to someone who does not have the right of subrogation as a stranger to the transaction and does not have the original note in their possession, and thereby lacks standing, or else I abandon the subject property to a party who has no right of subrogation and has no standing to foreclose or evict. These are false choices.

41. The obvious implication made by the Plaintiffs agent in the Trustees Deed Upon Sale is that they have the right to hold a foreclosure sale without a judicial process as part of the right to evict me. The action of recording a Trustees-Deed-Upon-Sale is false and misleading and designed to induce and mislead me and make me take actions to my detriment, such as abandoning the subject property. This is fraudulent because the alleged creditor is required to obtain a judgment from a court of record prior to selling the subject

property pursuant to California Civil Code Section 2924 as previously discussed. In addition, they are required to record an Assignment-of-Deed-of-Trust from the original note holder as required under California Civil Code 2932.5, and this was never done. California Civil Code Section 2932.5 states as follows:

"**2932.5**.  Where a power to sell real property is given to a mortgagee, or other encumbrancer, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. **The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded." [Emphasis added]**

42. Then we must take into account the case of <u>McNally v. U.S.</u>, 483 U.S. 350, 371-372, Quoting U.S. v Holzer, 816 F.2d. 304, 307. Fraud in its elementary common law sense of deceit includes the deliberate concealment of material information in a setting of fiduciary obligation. A public official is a fiduciary toward the public, and if he deliberately conceals material information from them he is guilty of fraud. "Silence activates estoppel" Carmine v. Bowen, 64 A. 932.

43. "Silence can only be equated with fraud where there is a legal or moral duty to speak, or where an inquiry left unanswered would be intentionally misleading." <u>U.S. v. Tweel,</u> 550 F.2d 297.

44. The Plaintiffs in the unlawful detainer case were allowed to sue for foreclosure even though they are strangers to the transaction, did not sign as a cosigner on the original promissory note signed with ZONE FUNDING, and therefore they have no standing to

1   foreclose. Under a ruling by the US Supreme Court in <u>Aetna L. Ins. Co. v. Middleport,</u>

2   124 US 534, (1888), the US Supreme Court stated that the right of subrogation does not

3   exist for a stranger to the transaction. The court ruling by the US Supreme Court also

4   stated that only a cosigner, or someone who is acting to protect their own junior lien or an

5   insurance company has the right of subrogation. "<u>Subrogation in equity is confined to the</u>

6   <u>relation of principal and surety and guarantors</u>, to cases where a person to protect his own

7   junior lien is compelled to remove one which is superior, and to cases of

8
    insurance....Anyone who is under no legal obligation or liability to pay the debt is a
9
    stranger, and, if he pays the debt, a mere volunteer.". (emphasis mine) <u>Aetna Life v.</u>
10
    <u>Middleport</u>, 124 US 534, quoting <u>Suppiger v. Garrels</u>, 20 Bradwell App Ill. 625. The
11

12  State court case is void because they never had jurisdiction in the case for three reasons:

13  (1) the Plaintiff in the state case never had the right of subrogation; (2) The Plaintiff in

14  the state case never produced the original note; and (3) The state case was filed under

15  equity jurisdiction instead of common law, common law jurisdiction is required under Ex
16
    Parte Thislteton, supra. See also Article Three, Section Two of the US Constitution, see
17
    <u>Callan v. Wilson</u>, 127 US 540.
18

19

20  45. The term subrogation has a well-established meaning in the law, and the above US

21  Supreme Court ruling employs clear and unmistakable language, which does not lend it
22
    self to ambiguity or a multiplicity of interpretations. Black's Law Dictionary supplies a
23
    definition as follows: "The substitution of one person in place of another with reference
24
    to a lawful claim, demand or right, so that he who is substituted succeeds to the rights of
25
    the other, in relation to the debt or claim, and as it's rights remedies or securities. Home
26
    Owners Loan Corporation v. Baker, 299 Mass 158, 12 NE 2d 199, 201. Gerken v.
27

28
    Notice of Removal                    31

Davidson Grocery Co. 57 Idaho 670, 69 P. 2d 122, 126. The lawful substitution of a third party in place of a party having a claim against another party. **Insurance companies, guarantors and bonding companies** generally have the right to step into the shoes of the party whom they compensate and sue any party whom the compensated party could have sued." (Emphasis added.) Black's Law Dictionary, Fifth Edition, Page 1279.

46. Because they have no right of subrogation, the Plaintiff has no right to enforce the note, and thereby no right to foreclose or to claim any right, title or interest in the subject property. They also have no standing because they have failed and refused to produce the note. I have a right to expect that anyone who is attempting to foreclose on the property has the right to do so as someone who has standing. The Plaintiff clearly has never had standing to foreclose, based upon the above analysis and facts. **Please note that the Plaintiff has ever claimed that they or their predecessor-in-interest has the right of subrogation.** They have never brought forward evidence that refutes, rebuts, challenges or denies my statement of fact that the Undisclosed-Third-Party-Note-Buyer does not have the right of subrogation and is not a co-signer. The Trustee has stated that they are acting as trustee and an agent for unidentified-note-holder. California Courts are bound by the US Constitution and laws passed in pursuance thereof, including the FIFTH AND FOURTEENTH AMENDMENTS TO THE US CONSTITUTION. The California Superior Court that allowed the Plaintiff to file this foreclosure case, either knew or should have known that the right of subrogation does not exist for a stranger to the transaction, see 73 AM JUR 2d Section 90. The Superior Court in San Mateo-County, has a duty to dismiss lawsuits whenever the Plaintiff, such as BANK OF AMERICA, NA, while purchasing a property from one who has no standing to foreclose from an

1    undisclosed- Third-Party-Note-Buyer, does not have standing to sue. The Plaintiff has

2    never denied statements in our answer to the complaint that neither they nor their

3    predecessor-in-interest has the right of subrogation, thus agreeing with the statements

4    made there.

5

6    47. I am, therefore removing this case because of the Diversity of Citizenship statutes, the

7    lack of standing of the Plaintiff, and the violations of procedural and substantive due

8    process that are a part of this lack of standing.

9

10   Dated: The _____29th_____ day of the ___September___ month
11   in the year of our Lord two -thousand and twelve.

12   Pro Hac Vice

13

14

15

16   Lamesha Robertson

17

18

19

20

21

22   **Verification**

23

24       In Witness, Whereof, Knowing the law of bearing false witness before God and Men,

25   we Solemnly aver the above is true and correct and is presented to the Plaintiff in good

26   faith and is not interposed for the purpose of delay or any other purpose with which we,

27   the Defendants, have herein stated and declared.

28

Notice of Removal                    33

That we have further read the above **Notice of Removal of a Civil Case** and know the contents thereof to be true; and the same is true of our own knowledge, except to the matters which are therein stated on our information and belief, and as to those matters we believe them to be true.

Sealed by the voluntary act of our own hand on this _____29th_____

day of the _____September_____ month, in the Year of our Lord, two -

thousand and sixteen, in the fourth century of the Independence of America.


_____

Lamesha Robertson

1

# List of Exhibits

2

3

4    **Exhibit A**            Copy of Deed of Trust and Assignment of Deed of Trust

5    **Exhibit B**            Copy of Qualified Written Request

6    **Exhibit C**            Copies of Notice of Default and Trustees Deed Upon Sale

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit A

**LandSafe Default**

RECORDING REQUESTED BY:
RECONTRUST COMPANY
AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1757 TAPO CANYON ROAD, SVW-88
SIMI VALLEY, CA 93063

**2011-031370**
10:30 am 03/17/11 AT Fee: 15.00
Count of Pages 1
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

\* R 0 0 0 1 1 5 4 8 3 2 \*

TS No. 08-0042254

08-8-16543 1

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/MORTGAGE

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**CITIBANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2007-QH2**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 03/15/2007, EXECUTED BY: LAMESHA ROBERTSON, AN UNMARRIED WOMAN, TRUSTOR: TO FINANCIAL TITLE COMPANY, TRUSTEE AND RECORDED AS INSTRUMENT NO. 2007-044971 ON 03/23/2007, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S OFFICE OF SAN MATEO COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID DEED OF TRUST/MORTGAGE.

DATED: ~~April 30, 2008~~ 3/7/11    MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

State of: California ~~Ventura~~ )
County of: )
On MAR 0 7 2011 before me, Jeanine Hoffman, notary public, personally appeared G. Hernandez, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

BY: G. Hernandez, Assistant Secretary

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature Jeanine Hoffman (Seal)

JEANINE HOFFMAN
Commission # 1840486
Notary Public - California
Los Angeles County
My Comm. Expires Apr 11, 2013

Form asgnmnt (01/09)

(Page 1 of 3)

**LANDSAFE TITLE**
RECORDING REQUESTED BY:
**RECONTRUST COMPANY**
AND WHEN RECORDED MAIL TO:

**RECONTRUST COMPANY**
**1757 TAPO CANYON ROAD, SVW-88**
**SIMI VALLEY, CA 93063**

Forward Tax Statements to Address listed above

**2012-002367**

9:56 am 01/09/12 TD Fee: 21.00
Count of Pages 3
Recorded in Official Records
County of San Mateo
Mark Church
Assessor-County Clerk-Recorder

|||||||||||||||||||||||||||||

**\* R 0 0 0 1 3 2 7 6 5 2 \***

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS No.  08-0042254
Title Order No.  08-8-165431

### TRUSTEE'S DEED UPON SALE

APN#    062-083-210          TRANSFER TAX:$ _____

The Grantee herein  was the beneficiary
The amount of the unpaid debt was $ 721,777.76
The amount paid by the Grantee was $ 720,545.77
The property is in the city of MENLO PARK, County of SAN MATEO

RECONTRUST COMPANY, N.A., as the duly appointed Trustee (or successor Trustee or substituted Trustee), under a Deed of Trust referred to below, and herein called "Trustee", does hereby grant without covenant or warranty to:

CITIBANK, N.A., AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS, INC. ASSET-BACKED CERTIFICATES, SERIES 2007-QH2

herein called Grantee, the following described real property situated in SAN MATEO County, California:

SEE ATTACHED LEGAL DESCRIPTION

This conveyance is made pursuant to the powers conferred upon Trustee by the Deed of Trust executed by LAMESHA ROBERTSON, AN UNMARRIED WOMAN, as Trustor, recorded on 03/23/2007, Instrument Number 2007-044971 ( or Book , Page ) Official Records in the Office of the County Recorder of SAN MATEO County.

All requirements of law regarding the recording and mailing of copies of the Notice of Default and Election to Sell, and the recording, mailing, posting, and publication of the Notice of Trustee's Sale have been complied with.

*Form trsteedeed_2011.11.0_11/2011*

Financial Title Company
Escrow No _411816889 285 DKP_

**2007-044971**
02:27pm 03/23/07 DT  Fee: 76.00
Count of pages 24
Recorded in Official Records
County of San Mateo
Warren Slocum
Assessor-County Clerk-Recorder

Recording Requested By:
Zone Funding

Return To:
Zone Funding

4277 Valley Fair Street
Simi Valley, CA 93063
Prepared By:

4277 Valley Fair Street
Simi Valley, CA 93063

────────────── [Space Above This Line For Recording Data] ──────────────

# DEED OF TRUST

LOAN NO.:  0000017029
ESCROW NO.:  41186889-285

MIN  100242400000170298
MERS Phone: 1-888-679-6377

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated          MARCH 15, 2007          ,
together with all Riders to this document.
(B) "Borrower" is
LAMESHA ROBERTSON, AN UNMARRIED WOMAN

Borrower's address is 1215 HOLLY BURNE AVENUE, MENLO PARK, CA 94025
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
Zone Funding

Lender is a  CORPORATION
organized and existing under the laws of  California

Initials _LR_

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3005  1/01
V-6A(CA) (0207).01                    Page 1 of 15          LENDER SUPPORT SYSTEMS, INC MERS6ACA.NEW (05/06)

Lender's address is
4277 Valley Fair Street, Simi Valley, CA 93063

(D) "Trustee" is
FINANCIAL TITLE COMPANY

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated       MARCH 15, 2007
The Note states that Borrower owes Lender

FOUR HUNDRED THIRTY EIGHT THOUSAND SEVEN HUNDRED FIFTY AND NO/100 X X X X X X X X X X X

Dollars

(U.S. $ 438,750.00               ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than   APRIL 01, 2037

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "RIDERS" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

[XX] Adjustable Rate Rider        [ ] Condominium Rider            [ ] 1-4 Family Rider
[ ] Graduated Payment Rider       [ ] Planned Unit Development Rider  [ ] Biweekly Payment Rider
[ ] Balloon Rider                 [ ] Rate Improvement Rider       [ ] Second Home Rider
[XX] Other(s) [specify] INTEREST-ONLY ADDENDUM TO ADJUSTABLE RATE RIDER
                        PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: _LR_

V-6A(CA) (0207).01                      Page 2 of 15                          Form 3005 1/01

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

    COUNTY                          of              SAN MATEO                      :
[Type of Recording Jurisdiction]                      [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF. .....AND BEING MORE PARTICULARLY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 062-083-210                           which currently has the address of
                      1215 HOLLY BURNE AVENUE                                      [Street]
            MENLO PARK                      [City] , California      94025      [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances

                                                                Initials: _LR_

V-6A(CA) (0207).01                        Page 3 of 15                        Form 3005  1/01

of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

Initials: LV

Form 3005  1/01

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _LR_

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials: _____

V-6A(CA) (0207).01                         Page 8 of 15                         Form 3005  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

   13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

   Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

   14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

   If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

   15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials: _LL_

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials:

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any RIDER executed by Borrower and recorded with it.

Witnesses:

_____
                                -Witness

_____
                                -Witness

*Lamesha Robertson* _____(Seal)        _____(Seal)
LAMESHA ROBERTSON    -Borrower                                      -Borrower

_____(Seal)        _____(Seal)
                                  -Borrower                                        -Borrower

_____(Seal)        _____(Seal)
                                  -Borrower                                        -Borrower

_____(Seal)        _____(Seal)
                                  -Borrower                                        -Borrower



41186889 -285 -DKD

Legal Description

All that certain real property situated in the City of Menlo Park, County of San Mateo, State of California, described as follows:

Lot 21, Block 22 as designated on the map entitled, "Newbridge Park Map No. 2, San Mateo County, Cal.", which map was filed in the Office of the Recorder of San Mateo, State of California, on November 17, 1926 in Book 14 of Maps at Pages 51, 52 and 53.

062-083-210

State of CALIFORNIA
County of San Mateo

On March 15, 2007                before me, Susan J. Amirsehhi, Notary Public,

} ss.

                                                                personally appeared

LAMESHA ROBERTSON

                                                          , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

                                        Susan J. Amirsehhi          (Seal)

```
SUSAN J. AMIRSEHHI
Commission # 1462980
Notary Public - California
San Mateo County
My Comm. Expires Feb 10, 2008
```

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE RIDER

LOAN NO.:   0000017029

MIN: 100242400000170298
MERS Phone: 1-888-679-6377

PROPERTY ADDRESS: 1215 HOLLY BURNE AVENUE, MENLO PARK, CA  94025

THIS ADDENDUM is made this   15th   day of      MARCH, 2007      , and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to
Zone Funding

(the "Lender").

THIS ADDENDUM supersedes Section 4(C) of the Rider.  None of the other provisions of the Note are changed by this Addendum.

**4.      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
       (C)     Calculation of Changes
              Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE  AND 990/1000THS                             percentage point(s) (  5.990  %) to the Current Index for such Change Date.  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

              During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest.  This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period.  If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance.  At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note.  The result of this calculation will be the new amount of my monthly payment.  After the end of the Interest-Only Period, my payment will not be reduced due to voluntary prepayments.

Initials: _____

_Lamesha Robertson_ _____(Seal)  _____(Seal)
LAMESHA ROBERTSON           -Borrower                             -Borrower

_____(Seal)  _____(Seal)
-Borrower                                    -Borrower

_____(Seal)  _____(Seal)
-Borrower                                    -Borrower

_____(Seal)  _____(Seal)
-Borrower                                    -Borrower

# PREPAYMENT RIDER

LOAN NO.:  0000017029

MIN: 100242400000170298
MERS Phone: 1-888-679-6377

This "PREPAYMENT RIDER" (hereinafter "Rider") is made this 15th day of     MARCH, 2007     ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date made by the undersigned (the "Borrower") to
secure Borrower's Note (the Note") to
Zone Funding

(the "Lender") which is secured by the Security Instrument on real property located at:

1215 HOLLY BURNE AVENUE, MENLO PARK, CA  94025
*[Property Address]*

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Note or Security
Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of Principal at any time before they are due. A prepayment of all of
the unpaid principal is known as a "Full Prepayment."  A prepayment of only part of the unpaid principal
is known as a "Partial Prepayment."

Except as provided below, I may make a Full or Partial Prepayment without paying any penalty.  If I
make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced
no more than one month.  If I make any other Partial Prepayments, I must still make each later payment as
it becomes due and in the same amount.  I may make a Full or Partial Prepayment at any time.

In the event, during the first     TWENTY FOUR     ( 24 ) months after the execution of the Deed
of Trust, I make a Full Prepayment or Partial Prepayment and the total of such prepayments in any twelve
(12) month period exceeds     TWENTY     percent ( 20.00 %) of the original Principal amount of
the loan, I will pay a prepayment charge in an amount equal to the payment of     SIX
( 6 ) months' advance interest on the amount prepaid which is in excess of     TWENTY     percent
( 20.00   %) of the original Principal amount.

Initials: _LP_

Prepayment - HARD                    Page 1 of 2            LENDER SUPPORT SYSTEMS INC. PRE-CA-R.PRE (04/06)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Rider.

_Lamesha Robertson_ _____ (Seal)
LAMESHA ROBERTSON                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

Page 2 of 2

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published In** *The Wall Street Journal*) **- Rate Caps)**
SEE "INTEREST-ONLY ADDENDUM TO ARM RIDER" ATTACHED HERETO AND MADE A PART HEREOF.

LOAN NO.:  0000017029

MIN: 100242400000170298
MERS Phone: 1-888-679-6377

THIS ADJUSTABLE RATE RIDER is made this    15th    day of    MARCH, 2007    ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust, or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
Zone Funding

("Lender") of the same date and covering the property described in the Security Instrument
and located at:

1215 HOLLY BURNE AVENUE, MENLO PARK, CA  94025
[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of    11.875    %. The Note provides
for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The interest rate I will pay may change on the first day of    APRIL, 2009    ,
and on that day every    6th    month thereafter. Each date on which my interest rate
could change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is the average of interbank offered rates for six month U.S. dollar-denominated
deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most
recent Index figure available as of the first business day of the month immediately preceding
the month in which the Change Date occurs is called the "Current Index."

Initials: *LR*

**Form 3138 1/01**

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR SIX-MONTH INDEX (AS PUBLISHED IN
THE WALL STREET JOURNAL) - Single Family - Fannie Mae Uniform Instrument
V-838R (0402).01                    Page 1 of 4           LENDER SUPPORT SYSTEMS INC. 838R.NEW (09/06)

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding FIVE AND 990/1000THS                                                percentage points ( 5.990        %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at  the first Change Date will not be greater than 13.875        % or less than        11.875        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000THS                                                percentage points ( 2.000        %) from the rate of interest I have been paying for the preceding        6 months. My interest rate will never be greater than   17.875   % , or less than 11.875 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Lamesha Robertson_____ __(Seal)    _____ __(Seal)
LAMESHA ROBERTSON                    -Borrower                                        -Borrower

_____ __(Seal)    _____ __(Seal)
                         -Borrower                                        -Borrower

_____ __(Seal)    _____ __(Seal)
                         -Borrower                                        -Borrower

_____ __(Seal)    _____ __(Seal)
                         -Borrower                                        -Borrower

V-838R (0402).01              Page 4 of 4              Form 3138 1/01